# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| KELLY WAGGONER, et al., | ) | CASE NO.  5:14cv1626 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| | ) | |
| U.S. BANCORP, a foreign corporation, | ) | |
| et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Pending before the Court is the motion of plaintiffs, Kelly Waggoner and Darbey Schultz, seeking conditional certification of a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* (Doc. No. 20 ["Mot."]). U.S. Bancorp and U.S. Bank National Association (collectively referred to as "defendant" or "U.S. Bank"), opposes the motion (Doc. 27 ["Opp'n"]), and plaintiffs have filed a reply (Doc. No. 31 ["Reply"]). U.S. Bank has sought leave to file a sur-reply and has attached a proposed sur-reply to its motion (Doc. Nos. 32 ["Mot. to File"] and 32-1 ["Sur-Reply"]). Plaintiffs do not oppose the filing of a sur-reply (*see* Doc. No. 33) and, for good cause shown, defendant's motion is GRANTED, and the proposed sur-reply is considered filed and properly before the Court. This matter is fully briefed and ripe for resolution.

## I. BACKGROUND

U.S. Bank operates over 3,000 banking branches across the United States, primarily in the West and Midwest. (Mot. at 174[1]; Doc. No. 6 ["Am. Compl."] ¶ 2; Doc.

---

[1] All page numbers are to the page identification number generated by the Court's electronic docketing system.

No. 13 ["Answer"] ¶ 2.) Of these locations, over 800 are "in-store" branches, located in supermarkets and other retail superstores, including Wal-Mart. (Am. Compl. ¶ 3; Mot. at 174 [citation omitted].) The in-store branches provide a convenient way for customers to attend to their banking needs while shopping for groceries and other items.

Plaintiffs are former employees of U.S. Bank, who were previously employed by U.S. Bank in various in-store branches as "co-managers." (Doc. No. 20-4 ["Waggoner Decl."] ¶¶ 1-2; Doc. No. 20-5 ["Schultz Decl."] ¶¶ 1-2.) During her tenure with U.S. Bank, plaintiff Waggoner served as a co-manager at in-store branches in Akron, Canton, and Massillon, Ohio. (Waggoner Decl. ¶ 2.) Plaintiff Schultz worked as a co-manager at an in-store branch in a Giant Eagle grocery store in Massillon, Ohio. (Schultz Decl. ¶ 2.) Plaintiffs claim that they, and other similarly situated co-managers employed by U.S. Bank at in-store branches across the country, were denied wages and overtime compensation, in violation of the FLSA. According to plaintiffs, U.S. Bank misclassified the in-store co-manager position as "exempt" for purposes of the FLSA and statutory overtime provisions, notwithstanding the fact that the primary duties performed by these co-managers were limited to non-exempt functions involving customer service, sales, and operations. (Waggoner Decl. ¶¶ 13-15; *see also* Answer ¶ 7 ["Defendants admit that there are exempt-classified Co-Managers."].)

Plaintiff initiated this action on July 23, 2014. Following the filing by plaintiffs of an amended complaint, and the filing by defendant of an answer, the Court scheduled this matter for a telephonic Case Management Conference ("CMC") to be held on January 16, 2015. Prior to the CMC, on December 23, 2014, plaintiffs filed the present motion for conditional certification and court-authorized notice. By their motion,

plaintiffs seek to certify as a class all individuals who work or who have worked for U.S. Bank as co-managers at in-store branches in the United States, excluding those branches in California . . . who elect to opt-in to this action (the "FLSA Collective").[2] As of the date of this opinion, three other former in-store co-managers have expressed an interest in joining the action by filing written consents to join. (Doc. Nos. 10, 11.) These opt-in plaintiffs—Debthy Brown, Rachael Nieves, and Richard DeGregorio—worked in U.S. Bank in-store branches in Spring Hill Tennessee, Franklin, Tennessee, and Las Vegas, Nevada, respectively. (Doc. No. 20-6 ["Brown Decl."] ¶ 2; Doc. No. 20-7 ["Nieves Decl."] ¶ 2; Doc. No. 20-8 ["DeGregorio Decl."] ¶ 2.)

The Court subsequently converted the January 16, 2015 CMC to a telephone status conference with counsel to set a briefing schedule for plaintiffs' motion to conditionally certify the collective. (Jan. 14, 2015 Non-document Order.) In anticipation of the status conference, counsel filed a joint stipulation proposing dates for the briefing of the motion. While plaintiffs indicated that they did not believe that discovery was appropriate at this stage in the proceedings, they agreed—"in order to avoid a dispute"—to permit defendant to take the depositions of plaintiffs and the opt-in plaintiffs. (Doc. No. 23 ["Stip."] at 265.) During the status conference, the Court adopted the parties' jointly proposed briefing schedule. In the minutes of proceedings, the Court noted that the parties had agreed to engage in a limited amount of discovery, including the aforementioned plaintiff depositions and a Fed. R. Civ. P. 30(b)(6) deposition on

---

[2] According to plaintiffs, U.S. Bank treats its California in-store co-managers as non-exempt and pays them overtime compensation. Therefore, plaintiffs do not seek to include former and present California co-managers in the FLSA Collective. (Mot. at 173 n.1.)

certain undisclosed topics identified in plaintiffs' previously served, but not filed, deposition notice. (Jan. 16, 2015 Minutes.) There was no indication at the status conference that any of the unidentified topics for the Rule 30(b)(6) deposition related to collective certification. Additionally, the parties did not request—and the Court did not set—a formal period of discovery on the issue of conditional certification.

## II. STANDARD OF REVIEW

A collective action under the FLSA "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing[.]" 29 U.S.C. § 216(b). Thus, in order to join a collective action, an employee must (1) be "similarly situated" to the plaintiff who maintains the action, and (2) give his written consent to join. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). A collective action brought under § 216(b) is distinguishable from a class action, which is governed by Federal Rule of Civil Procedure 23, in that plaintiffs in a collective action must "opt-in" rather than "opt-out" of the lawsuit. *Id*. The "opt-in" nature of the collective action "heightens the need for employees to 'receiv[e] accurate and timely notice concerning the pendency of the collective action.'" *Castillo v. Morales, Inc*., 302 F.R.D. 480, 483 (S.D. Ohio 2014) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)). The statute, therefore, vests in the district court the discretion to facilitate notice to potential plaintiffs "in appropriate cases[.]" *Hoffmann-La Roche*, 493 U.S. at 169.

4

The Sixth Circuit has "implicitly upheld a two-step procedure for determining whether an FLSA case should proceed as a collective action." *Heibel v. U.S. Bank Nat'l Ass'n*, No. 2:11-CV-00593, 2012 WL 4463771, at *2 (S.D. Ohio Sept. 27, 2012) (citing *In re HCR ManorCare, Inc*., No. 113866, 2011 WL 7461073, at *1 (6th Cir. Sept. 28, 2011)) (further citation omitted); *see also Watson v. Advanced Distrib. Servs., LLC*, 298 F.R.D. 558 (M.D. Tenn. 2014) (applying two-step procedure); *McNelley v. ALDI, Inc*., No. 1:09 CV 1868, 2009 WL 7630236 (N.D. Ohio Nov. 17, 2009) (same). "The first [step] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (quotation marks and citations omitted).

At the first step, the plaintiff bears the burden of showing that the employees in the class are "similarly situated." *Comer*, 454 F.3d at 546. To satisfy this burden at this initial notice stage, the plaintiff must only "make a modest factual showing" that is he similarly situated to the other employees he is seeking to notify. *Id*. 546-47 (quotation marks and citations omitted). The standard at the notice stage is "fairly lenient . . . and typically results in 'conditional certification' of a representative class[.]" *Id*. at 547 (quoting *Morisky v. Pub. Serv. Elec. & Gas Co*., 111 F. Supp. 2d 493, 497 (D. N.J. 2000)) (further citation omitted).

During this preliminary stage, a district court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility. *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011). Moreover, the FLSA does not import "the more stringent criteria for class certification under Fed. R. Civ. P. 23" and it is also "less stringent than [the] Rule 20(a) requirement that claims 'arise out of the same action

5

or occurrence' for joinder to be proper[.]" *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009).

      As regards the initial inquiry into whether plaintiffs are similarly situated with the proposed collective, the Sixth Circuit has observed that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. The court in *O'Brien* also explained, however, that "[s]howing a 'unified policy' of violation is not required" to support conditional certification of a collective act. *Id*. at 584. Rather, plaintiffs may also meet the similarly situated requirement if they can demonstrate, at a minimum, that "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id*. at 585; *see Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865-66 (S.D. Ohio 2005) (At this stage, a plaintiff must establish a "colorable basis" for his allegation that others are similarly situated and should therefore be notified of the action.) (quotation marks and citations omitted); *see also Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (at the initial notice stage, "the named plaintiff need only show that [his] position [is] similar, not identical, to the positions held by the putative class members").

      Factors that guide the Court's consideration of conditional certification at this stage include: (1) whether potential plaintiffs were identified; (2) whether affidavits of potential plaintiffs were submitted; and, (3) whether there is evidence of a "widespread" discriminatory plan affecting those plaintiffs, which was maintained by defendants. *Castillo*, 302 F.R.D. at 486 (citation omitted); *Lewis*, 789 F. Supp. 2d at 868;

6

*Mehmedi v. La Dolce Vita Bistro, LLC*, No. 1:10 CV 1591, 2010 WL 4789579, at *1 (N.D. Ohio Nov. 17, 2010) (citation omitted).

During the second step (or phase), courts have discretion to make a thorough finding regarding the "similarly situated" requirement, based upon a more fully developed record. *See Comer*, 454 F.3d at 547. At this time, a court is more inclined to consider "'(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff, [and] (3) fairness and procedural considerations . . . .'" *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 367 (E.D. Tenn. 2006) (quoting *Theissen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)). Should the district court determine that, after this more rigorous and fact-intensive analysis, the claimants are similarly situated, "the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice." *Douglas v. GE Energy Reuter Stokes*, No. 1:07CV077, 2007 WL 1341779, at *4 (N.D. Ohio Apr. 30, 2007).

Where substantial discovery on the question of conditional certification has already taken place, some courts have employed a standard that falls between the "modest" showing required at the first step, and the more exacting showing required at the second step. *See Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 823-27 (N.D. Ohio 2011). Often referred to as a "modest plus" factual showing, under this hybrid standard, the court entertains many of the factors usually reserved for the second stage, including disparate factual and employment settings and various defenses available to the employer, and considers the evidence from both plaintiff and defendant. *See, e.g.,*

7

*Jungkunz v. Schaeffer's Inv. Research, Inc*., No. 1:11-cv-00691, 2014 WL 1302553, at *7 (S.D. Ohio Mar. 31, 2014) (applying "modest plus" standard) (citing *Creely*, 789 F. Supp. 2d at 823-24).

While U.S. Bank has not specifically advocated for the "modest plus" standard of review, many of the cases it relies upon employed this heightened standard. In each of these cases, however, both sides were afforded considerable time to develop the record before the court ruled on the issue of conditional certification. *See, e.g., Cox v. Entm't U.S.A. of Cleveland, Inc*., No. 1:13 CV 2656, 2014 WL 4302535, at *2 (N.D. Ohio Aug. 29, 2014) (plaintiff had three months to conduct discovery); *Jungkunz*, 2014 WL 1302553, at *7 (parties had agreement to limit initial discovery to issue of similarly situated collective); *Anderson v. McCarthy, Burges & Wolff, Inc*., No. 1:14-CV-617, 2015 WL 224936, at *4 (N.D. Ohio Jan. 15, 2015) ("Plaintiff had a substantial period of time to conduct discovery on the issue of conditional certification."); *Neff v. U.S. Xpress, Inc*., No. 2:10-cv-948, 2013 WL 4479078, at *4 (S.D. Ohio Aug. 20, 2013) (parties were "provided the opportunity to conduct discovery on the issue of class certification"); *Bacon v. Eaton Aeroquip, LLC*, No. 11-CV-14103, 2012 WL 6567603, at *3 (E.D. Mich. Dec. 17, 2012) ("Plaintiffs have engaged in at least four months of discovery."); *Bowman v. Crossmark, Inc*., No. 3:09-CV-16, 2010 WL 2837519, at *4 (E.D. Tenn. July 19, 2010) (parties engaged in "considerable discovery directed toward conditional certification"); *Pacheco v. Boar's Head Provisions Co., Inc*., 671 F. Supp. 2d 957, 960 (W.D. Mich. 2009) (limited discovery "focused solely on the issue of certification").

The Court finds that it would be inappropriate to employ the "modest plus" standard to plaintiffs' motion. Unlike the cases cited by U.S. Bank, there has been

no *joint* discovery on the issue of conditional certification. The Court did not set a period of discovery on the "similarly situated" issue, and, in fact, the present motion was filed before any discovery had taken place. Moreover, while U.S. Bank took the depositions of the plaintiffs and the opt-in plaintiffs, it does not appear that plaintiff conducted any discovery, nor were they required to do so. In fact, U.S. Bank does not even suggest that plaintiffs failed to avail themselves of an opportunity to do discovery on this issue. *See, e.g., Lacy v. Reddy Elec. Co*., No. 3:11-cv-52, 2011 WL 6149842, at *3-4 (S.D. Ohio Dec. 9, 2011) (distinguishing *Creely*, and its use of the heightened standard, on grounds that only defendants conducted discovery). Because plaintiffs have yet to have the opportunity to develop the record on this subject, it would be inappropriate to hold them to the heightened standard. *See Saddler v. Memphis City Sch.*, No. 12-CV-2232-JTF-tmp, 2013 U.S. Dist. LEXIS 45479, at *16 (W.D. Tenn. Feb. 4, 2013) (noting that the courts that applied the heightened standard "did so based on a record that was more thoroughly developed") (available only on LEXIS).

## III. ANALYSIS

In support of conditional certification, plaintiffs offer the declarations of the two named plaintiffs and the three potential opt-in plaintiffs. The offerings in Waggoner's declaration are representative of the group. Waggoner represents that, during her tenure as a co-manager for U.S. Bank, she "regularly worked more than 40 hours per week[,]" often working through her lunch hour and on the weekends. (Waggoner Decl. ¶¶ 3-6.) Her "primary duties were completing teller transactions, waiting on U.S. Bank customers and servicing their banking needs alongside hourly personal bankers, walking the aisles of the grocery store the branch was located in to promote U.S. Bank's products

and services, and performing routine audits." (*Id*. ¶ 14.) These duties did not involve management of other U.S. Bank employees, and specifically, did not include "hiring, firing, or promoting other employees of U.S. Bank or setting their rates of pay[.]"[3] (*Id*. ¶ 16.) Waggoner also notes that, when she was moved from branch to branch, her "primary duties stayed the same, and [she] did not require any retraining in order to perform [her] job at the various branches in which [she] worked." (*Id*. ¶ 23.)

According to Waggoner, all co-managers were paid according to a similar compensation system that did not account for overtime, and all in-store co-managers performed duties similar to the ones she performed. (*Id*. ¶¶ 10, 12, 26.) While she does not explain how she is aware of the company-wide pay system, she does explain that her knowledge of the duties performed by other co-managers came from three sources: (1) her observations of co-managers who worked at other branches,  (2) conference calls and monthly meetings with other co-managers wherein they would discuss the activities at their respective branches, and (3) her personal experience at several different branches. (*Id*. ¶ 26.)

In addition to these representations, and similar ones from Schultz and the three putative members of the proposed collective, plaintiffs offer two job postings for a co-manager position, one for an in-store branch in Ohio and another for a branch in Oregon. (Doc. No. 20-2 ["Ohio job posting"]; Doc. No. 20-3 ["Oregon job posting"].) Plaintiffs posit that the "virtually uniform job descriptions [in these postings]

---

[3] Additionally, Waggoner averred that, while she assisted with the scheduling of employees at her branch, this duty ultimately rested with the branch manager. Likewise, while she was sometimes permitted to sit in on interviews at the branch manager's request, the branch manager always had the final say with respect to hiring. (*Id*. ¶¶ 16-17.) She estimated that she spent 90% of her day performing teller, and other non-management, duties. (*Id*. ¶ 15.)

demonstrate[] that U.S. Bank itself expected all "[i]n-store [c]o-[m]anagers to perform the same primary job duties." (Mot. at 187.)

   Plaintiffs maintain that this evidence more than satisfies the "modest" burden required at this stage in the proceedings. They insist that evidence of a company-wide plan of misclassification of all in-store co-managers as exempt from overtime requirements and the failure to pay them overtime as required under 29 U.S.C. § 207(a)(1) constitutes an adequate showing that plaintiffs and the potential collective are "'unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" (Mot. at 185 [quoting *Comer*, 454 F.3d at 546-47].) Indeed, courts have conditionally certified FLSA collective actions upon similar showings. *See, e.g., O'Neal v. Emery Fed. Credit Union*, No. 13 Civ. 22, 2014 WL 842948, at *5-6 (S.D. Ohio Mar. 4, 2014) (conditionally certifying FLSA collective of loan officers whom plaintiffs asserted were not paid overtime as required under the FLSA); *Cox v. Healthcare Servs. Grp., Inc.*, No. 3:13 CV 293, 2013 WL 2443785, at *4 (S.D. Ohio June 4, 2013) (conditionally certifying FLSA collective of account managers and managers in training who allegedly were misclassified as exempt.)

  A.  *Prior Rule 23 Holding is Inapplicable*

   Defendant disagrees, and vigorously opposes conditional certification on several fronts.[4] As a preliminary matter, defendant points to a decision by a California

---

[4] The Court does not address every argument raised by U.S. Bank in opposition to conditional certification. However, as will be clear from the discussion of the arguments specifically identified by the Court in this opinion, most, if not all, of defendant's arguments are premature.

district court wherein the court refused to grant class certification involving "similar misclassification claims made on behalf of U.S. Bank in-store branch managers—despite the fact that the standard for exemption is much stricter in California." (Opp'n at 314 [citing *Spainhower v. U.S. Bank Nat'l Ass'n*, Nos. 2:08-CV-00137-JHN-PJWx, 2:08-CV-00645-FMC-PJWx, 2010 WL 1408105 (C.D. Cal. Mar. 25, 2010)].) For several reasons, the Court finds this prior ruling to be of limited value.

First, the ruling in *Spainhower* was based upon an analysis under Rule 23 of the Federal Rules of Civil Procedure. *Spainhower*, 2010 WL 1408105, at *3. The standard for granting conditional certification in an FLSA case is much lower than the standard for certification of a class action brought under Rule 23. *See O'Brien*, 575 F.3d at 584 ("While Congress could have imported the more stringent criteria for class certification under Fed. R. Civ. P. 23, it has not done so in the FLSA.") (citation omitted); *Thompson v. Bruister & Assocs., Inc.*, 967 F. Supp. 2d 1204, 1217 (M.D. Tenn. 2013) (denying certification and stating that in *O'Brien* "the Sixth Circuit explicitly held that there is a distinction between collective actions under the FLSA and class actions under Rule 23, and that it is improper to 'apply a Rule 23-type analysis' in FLSA collective actions because Rule 23 'is a more stringent standard than is statutorily required'") (quoting *O'Brien*, 575 F.3d at 584-85); *see Peterson v. Cleveland Inst. of Art*, No. 1:08 CV 1217, 2011 WL 1230267, at *3 (N.D. Ohio Mar. 30, 2011) ("The class certification requirements of Federal Rule of Civil Procedure 23 are not applicable to a determination of whether conditional class certification is appropriate in an action pursuant to 29 U.S.C. § 216(b)") (citation omitted); *Oakes v. J.F. Bernard, Inc.*, No. 5:11-cv-1006, 2011 WL

6415535 (N.D. Ohio Nov. 22, 2011) ("Most courts agree that collective actions pursuant to § 216 should not be guided by Rule 23.") (collecting cases).

Second, and equally important, the position at issue in *Spainhower* was that of branch manager. According to plaintiffs, most, if not all, of the managerial responsibilities required to be performed at the in-store branches fell to the branch manager. (*See, e.g.,* Waggoner Decl. ¶¶ 16-18 [hiring, firing, promoting, scheduling employees, and preparation of performance reviews all done by branch manager].) While discovery may ultimately tell a different story as to the division of labor between managers and co-managers at in-store branches across the country, plaintiffs' showing in support of their motion suggests that the positions are significantly different. Thus, any analysis of the branch manager position is of little assistance to this Court, at least at this point in the proceedings.

### B.    Consideration of Exemption Inappropriate at this Stage

Defendant insists that plaintiffs' own evidence demonstrates that co-managers regularly performed managerial job duties, such that those employed in the co-manager position would qualify as exempt from overtime wages under the executive exemption to the FLSA under 29 U.S.C. § 213(a)(1). *See* 29 C.F.R. § 541.102. Defendant notes that the job postings that plaintiffs have offered in support of their motion clearly include job duties—such as staffing, scheduling, and supervising subordinates—that would qualify the position for treatment under the executive exemption. (Opp'n at 317 [citations to the record omitted].) Defendant also directs the Court's attention to the deposition testimony of plaintiffs, highlighting the fact that plaintiffs testified that the job postings did not describe their duties and further underscoring the fact that plaintiff

Schultz admitted that—contrary to statements in his declaration—his primary duties were managerial in nature. (*Id*. at 317-18 [citations to the record omitted].)

It would be inappropriate to consider the merits of defendant's defense at this time, before the record has been developed. "Courts considering whether an exemption applies typically do so . . . after some discovery on the issue."[5] *Killion v. KeHE Distrib.*, Nos. 3:12 CV 470, 3:12 CV 1585, 2012 WL 5385190, at *4 (N.D. Ohio Oct. 31, 2012) (collecting cases); *see White*, 236 F.R.D. at 373 (at the notice stage, "a defendant's assertion of the potential applicability of an exemption should not be permitted to overcome an otherwise adequate threshold showing by the plaintiff"); *Heibel*, 2012 WL 4463771, at *5 (similar). Moreover, the weight to be given to any declaration that is contradicted by subsequent deposition testimony is a matter best reserved for the second stage of the proceedings. *See Saddler*, 2013 U.S. Dist. LEXIS 45479, at *21 (fact that plaintiff's affidavit may have been contradicted by certain portions of her deposition was not a proper consideration for the conditional certification stage).

## C.  *Too Early to Consider Defendant's Evidence of Varying Duties*

U.S. Bank also argues that plaintiffs cannot establish that they are similarly situated to each other, let alone to the putative collective, because job responsibilities differed from branch to branch and co-manager to co-manager. In

---

[5] For the same reasons, it would be inappropriate to consider plaintiffs' argument that they are entitled to summary judgment on defendant's affirmative defense under the executive exemption because they point to some evidence that they believe demonstrates that co-managers do not customarily direct the work of two or more other full-time employees. (Reply at 1365 [citing 29 C.F.R. § 541.104(a-b)].) Until such time as the record is fully developed through discovery, any ruling on the merits of plaintiffs' claims and defendant's defense would be premature.

support, defendant returns to the deposition testimony of plaintiffs and opt-in plaintiffs to show that each co-manager performed different tasks. (Opp'n at 327 [citing to depositions].) Defendant suggests that this testimony is at odds with plaintiffs' "cookie-cutter statements" in their declarations that their primary duties were sales, customer service, and operations. (*Id*. at 326.) Defendant also offers the declarations of seventeen current in-store co-managers, wherein these current employees aver that they regularly perform management duties. (*Id*. at 327 [citing fn. 2 of Opp'n].) According to defendant, the variation in job duties from co-manager to co-manager will require individualized inquiries into each co-manager's actual job duties, making collective treatment impractical. (*Id*. at 321.) These same variations, defendant continues, dispel the notion that the putative class was subjected to a company-wide policy of misclassification.

Once again, defendant has offered argument and evidence best left for consideration at the decertification stage. *See Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2008 WL 5725631, at *4 (N.D. Ohio June 9, 2008) ("Generally, courts have left assessment of disparate factual and employment settings of individual class members to the second stage of the analysis.") (collecting cases); *Wlotkowski v. Michigan Bell Tel. Co*., 267 F.R.D. 213, 219 (E.D. Mich. 2010) (similar) (citations omitted); *see, e.g., Killion*, 2012 WL 5385190, at *6 ("Although each Plaintiff describes his job slightly differently, that is not a bar to conditional certification so long as Plaintiffs can show they are similarly situated.") (citing *O'Brien*, 575 F.3d at 584); *Pendlebury v. Starbucks Coffee Co*., No. 04-CV-80521, 2005 WL 84500, at *2-3 (S.D. Fla. Jan. 3, 2005) (factual determination relating to amount of time each employee spent on exempt tasks, based on

15

plaintiffs' depositions and current employee's declaration, was not appropriate at initial stage.)

> D.     Plaintiffs have made a "Modest" Showing for Conditional Certification

Putting aside defendant's premature arguments, and focusing exclusively on plaintiffs' submissions in support of conditional certification, the Court still has serious concerns that this litigation can be maintained as a collective action. The declarations of plaintiffs and the potential opt-in plaintiffs contain only generalized statements about the job duties of other in-store co-managers. Plaintiffs fail to indicate how it is that they know that all in-store co-managers are subject to the same compensation system, and while they represent that they have discussed job duties with other, unidentified co-managers in monthly conference calls, they describe these conversations in the broadest of terms.[6]

Though this showing is quite thin, the Court concludes that plaintiffs have satisfied their lenient burden of demonstrating that they are similarly situated to the putative collective of present and former in-store co-managers. While defendant suggests that its decision to classify all co-managers as exempt is insufficient to meet this burden, plaintiffs rely on more than a uniform decision to support conditional certification. Through declarations of plaintiffs and potential opt-in former co-managers, plaintiffs

---

[6] There are certainly courts that, applying the evidentiary standard for affidavits found in Rule 56(e) of the Federal Rules of Civil Procedure, would find such evidence insufficient to support conditional certification. *See, e.g., Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865-66 (S.D. Ohio 2005) (relying on Fed. R. Civ. P. 56(e) and refusing to consider inadmissible hearsay evidence in affidavits in support of conditional certification). Most courts in the Sixth Circuit, however, "have held that plaintiff's evidence on a motion for conditional certification [need] not meet the same evidentiary standards applicable to motions for summary judgment because 'to require more at this stage of litigation would defeat the purpose of the two-stage analysis' under Section 216(b)." *Monroe v. FTS USA, LLC*, 257 F.R.D. 634, 639 (W.D. Tenn. 2009) (quoting, among authorities, *White*, 236 F.R.D. at 369).

have preliminarily demonstrated that in-store co-managers performed similar duties that often were devoid of management responsibility, regularly worked in excess of forty hours of week, and were similarly compensated by a pay system that did not include overtime. This showing establishes a colorable basis for their claim that a collective of similarly situated individuals exist. *See, e.g., Castillo*, 302 F.R.D. at 486 (plaintiffs met the "fairly lenient standard" for conditional certification by alleging unlawful pay practices that affected plaintiff and the putative collective members in the same way); *Killion*, 2012 WL 5385190, at *6-7 (evidentiary showing that plaintiffs held the same job, had similar job duties, and had limited discretion in how they performed their job sufficient to warrant conditional certification of collective); *Heibel*, 2012 WL 4463771, at *5-6 (evidence that employees in same position generally performed the same basic duties and were compensated in the same manner sufficient to support conditional certification).

A different result might have been reached had the Court employed the more stringent "modest plus" standard for conditional certification. If the parties had requested a period of discovery on the issue of similarly-situated employees, the record may have been such that the Court could have more fully tested plaintiffs' representations that the potential collective members are truly similarly-situated.

Thus, while the parties could have requested that conditional certification be approached in a different way, the Court must address motion as it has been presented and with the record as it currents exists. Requiring any more factual support from plaintiffs at this early stage, or weighing U.S. Bank's competing factual assertions, would intrude improperly into the merits of the action, imposing a burden upon plaintiffs to

17

prove the factual predicates of their claim as a precondition to obtaining preliminary conditional certification. If, after discovery is completed, the fully developed record does not support the treatment of this action as a collective action, U.S. Bank may seek to decertify the collective. Likewise if, at the close of discovery, U.S. Bank believes that it is entitled to judgment as a matter of law on any recognized FLSA exemption, it may move for summary judgment at that time. Such motions would be subject to a significantly more stringent review than the instant first-stage motion for conditional certification. *Nationwide Conditional Certification is Appropriate*

Alternatively, defendant argues that any collective should be limited to the states in which plaintiffs and the previously identified opt-in plaintiffs have worked—Ohio, Tennessee, and Nevada. It is defendant's position that the declarations from five plaintiffs, who worked in three different states, "are legally and factually insufficient to show that hundreds of other co-managers at hundreds of other branches nationwide are 'similarly situated' with respect to [p]laintiffs' allegations that they performed non-exempt work." (Opp'n at 323.)

Plaintiffs' showing of similar treatment and circumstances over three states appears to fall somewhere in between cases where nationwide conditional certification has been permitted and cases where it has not. *Compare Heibel*, 2012 WL 4463771, at *5 (plaintiffs' declarations involving similar pay and duties in five state sufficient to support nationwide certification); *Pendlebury*, 2005 WL 84500, at *3 (evidence that alleged improper classification spanned seven different locations in four states sufficient for nationwide certification); *with Ahmed v. T.J. Maxx Corp.*, No. 10-CV-3609(ADS)(ETB), 2013 WL 2649544, at *13 (E.D.N.Y. June 8, 2013) (evidence

18

from stores located in only two states insufficient to support nationwide certification); *Gayle v. United States*, 85 Fed. Cl. 72, 78-79 (2008) (no evidence of company-wide policy where plaintiff only provided evidence of experience of himself and two co-workers at same facility).

Plaintiffs underscore the fact that they have supplemented their declarations with evidence of job postings from two different states. Noting that the job postings are virtually identical, plaintiffs argue that this additional evidence demonstrates that U.S. Bank treats the in-store co-manager position the same company-wide. (Mot. at 187.) Certainly, it is true that job descriptions containing similar job duties, along with other evidence that demonstrates that the plaintiffs and opt-in plaintiffs are similarly situated with respect to job duties, can establish a company-wide FLSA violation. *See, e.g., Saddler*, 2013 U.S. Dist. LEXIS 45479, at *22-23 ("Numerous courts have recognized the probative value of company job descriptions to considering whether employees are similarly situated for the purpose of conditional certification.") (collecting cases); *see also Wade v. Werner Trucking Co*., 2:10-CV-270, 2012 WL 5378311, at *4 (S.D. Ohio Oct. 31, 2012) (a company's job descriptions are relevant in considering, at the conditional certification stage, whether a potential putative class is similarly situated) (collecting cases).

However, plaintiffs attempt to prove too much with these postings. The Court has reviewed these documents and agrees with defendant that most of the duties identified in the job postings are supervisory in nature and would be considered exempt. While plaintiffs offer the job postings to show consistent treatment of the position company-wide, it may very well be that U.S. Bank consistently treats the in-store co-

19

manager position as exempt because those who hold this position perform predominately exempt functions.

Nonetheless, the Court finds that the declarations, along with the job postings, support a preliminary finding of a company-wide policy. The fact that the job postings both contained certain managerial functions does not diminish their value at this early stage. *See Nerland v. Caribou Coffee Co. Inc*., 564 F. Supp. 2d 1010, 1020 (D. Minn. 2007) (job description supports conditional certification even though duties listed included exempt duties). It is plaintiffs' position that, notwithstanding U.S. Bank's classification of the in-store co-manager position as exempt, most of the day-to-day duties performed were non-exempt. At a minimum, these similar job postings are some evidence that U.S. Bank viewed the position the same, whether it was in Ohio or Oregon. *See McNelley*, 2009 WL 7630236, at *3 (store managers similarly situated because job descriptions demonstrated employer's view that managers had the same duties and responsibilities regardless of location). When this evidence is added to the declaration testimony that in-store co-managers in Ohio, Tennessee, and Nevada performed primarily non-exempt duties, it supports the inference—though by the thinnest of margins—that this treatment was nationwide.

The Court acknowledges that this is a close call, and defendant's evidentiary offerings raise serious questions about the future treatment of this case as a collective action, especially as a nationwide collective action. Still, the Court reiterates that plaintiffs' burden at this stage is minimal, and plaintiffs have not yet had the benefit of discovery. *See Neff*, 2013 WL 4479078, at *6 (observing that, while job descriptions from around the country and plaintiffs' declarations were insufficient to support

20

nationwide collective treatment following substantial discovery, such a showing may have been sufficient at an earlier stage in the proceedings). Given the manner in which the conditional certification issue presented itself to the Court, it is inappropriate to rush to judgment on the future of this action at this time. Moreover, conditionally certifying the collective nationwide will promote judicial economy and provide early notice to those potential opt-in class members, whose rights are time-sensitive. *See Hoffmann-LaRoche*, 493 U.S. at 170, 172 (judicial notice protects claims of potential collective members by informing similarly situated employees of the facts needed to make an informed decision whether to opt-in and avoids "multiplicity of duplicative suits"); *Comer*, 454 F.3d at 546 (unlike Rule 23, certification under § 216(b) does not toll the statute of limitations for potential plaintiffs); *Brasfield v. Source Broadband Servs*., *LLC*, 257 F.R.D. 641, 644 (W.D. Tenn. 2009). "[E]ven if plaintiffs' claims turn out to be meritless, or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case." *Krueger v. New York Tel. Co*., Nos. 93 CIV. 0178 (LMM), 93 CIV. 0179 (LMM), 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993) (citations omitted).

### E.  Content of the Notice

Attached to plaintiffs' motion is a proposed notice to be issued to all potential members of the collective, a proposed reminder notice, and a proposed reminder email. (Doc. No. 20-9 [Notice]; Doc. No. 20-10 [Reminder Notice]; Doc. No. 20-11 [Reminder Email].) In anticipation of issuing these notices and reminders, plaintiffs request that defendant produce:

> a computer-readable data file containing the names, last known mailing
> addresses, last known telephone numbers, last known personal and work
> email addresses, Social Security numbers (for those notices returned
> undeliverable), and work locations for all Collective Members[.]

(Mot. at 194.)

U.S. Bank raises several concerns regarding the content of the notices and the nature of the information plaintiffs have required regarding the Collective Members. For example, defendant suggests that the reminder notice is unnecessary and "crosses the narrow line between advising individuals of the existence of the lawsuit and encouraging participation." (Opp'n at 329 n.37 [citation omitted].) Defendant also complains that: (1) the notice seeks intrusive personal information of the Collective Members; (2) there is no defined notice period; and (3) the notice purportedly states the wrong class period. (*Id.*) Plaintiffs have agreed to confer with defendant as to the scope and language of the notices and the process for issuing them, and the Court is confident that the parties can come to an agreement regarding the notice process.

## IV. CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for conditional certification and court-authorized notice (Doc. No. 20) is GRANTED. The Court hereby CERTIFIES this action as a collective action made up of all individuals who work or who have worked for U.S. Bank as co-managers at in-store branches in the United States, excluding those branches in California, on or after July 23, 2011, who elect to opt-in to this action.

The Court DIRECTS the parties to meet and confer in good faith for the purpose of negotiating the language of the notice(s), the procedure for issuing the

notice(s), and the extent of the information defendant must produce to assist plaintiffs in identifying potential Collective Members. Within 10 days of this Memorandum Opinion and Order, the parties shall submit joint proposed notice(s) for the Court's final approval. If any specific language remains in dispute, that language shall be identified, along with each party's proposed language, and the Court will resolve the dispute. In their joint filing, the parties shall also identify any remaining disagreement as to the information defendant must produce regarding the identity of the potential members of the FLSA Collective, and the manner in which potential members should be contacted.

The Court further directs that, within thirty days of the approval of the form of notice by the Court, said notice(s) shall be sent to all potential Collective Members.

**IT IS SO ORDERED**.

Dated: June 24, 2015

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**