IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **KELLY WAGGONER and DARBEY SCHULTZ**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>**U.S. BANCORP**, a foreign corporation, and **U.S. BANK NATIONAL ASSOCIATION**, a foreign corporation,<br><br>Defendants. | Case No. 14-cv-1626<br><br>Hon. Sara Lioi |

## DECLARATION OF JUSTIN M. SWARTZ IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND RELEASE

I, Justin M. Swartz, declare as follows:

1. I am a partner at the firm of Outten & Golden LLP ("O&G") in New York, New York, Plaintiffs' Counsel herein, and co-chair of its Class Action Practice Group. O&G is a 50+ attorney firm with offices in Chicago, New York City, and San Francisco that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation, that involve wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

2. Along with lawyers at Barkan Meizlish Handelman Goodin DeRose Wentz LLP, Shavitz Law Group, P.A, and Winebrake & Santillo, LLC, I have been one of the lawyers primarily responsible for the prosecution of Plaintiffs' claims against Defendants U.S. Bancorp and U.S. Bank, N.A. ("U.S. Bank" or "Defendant").

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**Background and Experience**

4. I received a Juris Doctor degree from DePaul University School of Law in 1998 with honors. Since then, I have exclusively represented plaintiffs in employment litigation and other employee rights matters.

5. I was admitted to the bar of the State of Illinois in 1998, and the bar of the State of New York in 2002. I am also admitted to the bars of the Second Circuit Court of Appeals, the United States District Courts for the Western, Eastern, and Southern Districts of New York, and the Northern District of Illinois. I am a member in good standing of each of these bars.

6. From September 1998, through February 2002, I was associated with Stowell & Friedman, Ltd. in Chicago, Illinois, where I represented plaintiffs in class and multi-plaintiff employment discrimination cases. From March 2002 through October 2003, I worked for Goodman & Zuchlewski, LLP in New York City where I represented employees in discrimination cases and other employee rights matters.

7. Since joining O&G in December 2003, I have been engaged primarily in prosecuting wage and hour class and collective actions and class action discrimination cases.

8. I am or was co-lead counsel on many wage and hour cases that district courts have certified as class actions and/or collective actions including *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29. 2006), in which the Court granted summary judgment in favor of Plaintiffs and a class of more than 300 grocery store workers, *see* 628 F. Supp. 2d 447 (S.D.N.Y. Aug. 28, 2008). Others include *Briggs v. PNC Financial Services Group, Inc.*, No. 15 Civ. 10446, 2016 WL 1043429 (N.D. Ill. Mar. 16, 2016)

(certifying collective of nationwide assistant managers); *Watson v. Jimmy John's, LLC*, No. 15 Civ. 6010, 2015 WL 7180516, at *1 (N.D. Ill. Nov. 13, 2015) (certifying collective of nationwide assistant managers); *Flood v. Carlson Restaurants Inc.*, No. 14 Civ. 2740, 2015 WL 260436, at *1 (S.D.N.Y. Jan. 20, 2015) (certifying collective of nationwide tipped workers); *Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712, 2014 WL 5794655, at *2-4 (S.D.N.Y. Nov. 4, 2014) (certifying class and approving settlement of nationwide wage and hour class and collective action); *Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812, 2014 WL 4635745, at *25 (E.D.N.Y. Sept. 16, 2014) (certifying class action under New York Labor Law and appointing O&G as class counsel); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *2-4 (S.D.N.Y. Oct. 2, 2013) (same); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 472-76 (S.D.N.Y. 2013) (certifying class and approving settlement of nationwide wage and hour class and collective action); *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *2-4 (E.D.N.Y. Aug. 6, 2012) (certifying class and approving settlement of wage and hour class action brought under New York and federal law); *Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 1656920 (S.D.N.Y. May 9, 2012) (certifying class and approving settlement of wage and hour class action brought under New York and federal law); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (certifying class and approving settlement of wage and hour class action brought under New York and federal law); *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) (same); and *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (granting class certification and appointing O&G class counsel in multi-state wage and hour class action).

      9.      I am a member of the National Employment Lawyers Association ("NELA") and

serve on the Executive Board of its New York Chapter ("NELA/NY").  I am co-chair of NELA's Fair Labor Standards Act Committee.  I served on the Civil Rights Committee of the New York City Bar Association of the Bar of the City of New York from 2005 through 2008 and the Committee on Labor and Employment Law from September 2002 until June 2005.  I was co-chair of the American Bar Association Labor and Employment Law Section Ethics and Professional Responsibility Committee from 2006 through 2009, and am a member of its Equal Employment Opportunity Committee.  I also serve on the Recent Graduate Advisory Group of the New York University Center for Labor and Employment Law.

10. I speak frequently on employment law issues, including wage and hour issues and discrimination issues.  I have recently been a faculty member for continuing legal education programs focused on employment law and ethics sponsored by the American Bar Association Section of Labor and Employment Law; the New York State Bar Association Labor and Employment Law Section; the New York City Bar Committee on Labor and Employment Law, NELA, and the Practicing Law Institute, among others.

11. In connection with my work, I regularly read the New York Law Journal, advance sheets, and other literature related to employment law and class action law developments.  I attend workshops and seminars at least four times per year sponsored by NELA, NELA/NY, the American Bar Association, and other organizations.

12. Attorney Michael N. Litrownik has been an Associate with O&G since 2013.  After receiving his JD from Washington University School of Law in 2010, he was an Associate at Bromberg Law Office, P.C. in New York City.  Since 2010, Mr. Litrownik has exclusively represented employees and consumers in individual and class action litigation.  Mr. Litrownik is a member of the National Employment Lawyers Association – New York, where he serves on

the Judiciary Committee, the New York City Bar Association, where he serves on the Civil Rights Committee, and the Federal Bar Council.  Mr. Litrownik was admitted to the bar of the Commonwealth of Massachusetts in 2010, and the bar of the State of New York in 2011.  Mr. Litrownik is also admitted to the bars of the United States District Courts for the Southern, Eastern, and Western Districts of New York, the District of Massachusetts, the District of Connecticut, and the U.S. Courts of Appeal for the Second and Eleventh Circuits.  Mr. Litrownik is a member in good standing of each of these bars.  Mr. Litrownik has worked with me on many cases including *In re: Jimmy John's Overtime Litigation*, No. 14 Civ. 5509 (N.D. Ill.).

        a.      Attorney Jennifer Liu was an Associate with O&G from 2009 through 2015.  In 2015, she founded The Liu Law Firm, P.C., where she represents individuals in litigation and negotiation in all areas of employment law.  After receiving her JD/MBA from Stanford Law School and the Stanford Graduate School of Business in 2008, she served as a law clerk to the Honorable John G. Koeltl in the Southern District of New York.  Since then, Ms. Liu has exclusively represented employees in employment law matters.  Ms. Liu often publishes and speaks on employment law issues, including wage and hour issues and discrimination issues, and has served as a faculty member for continuing legal education programs focused on employment law sponsored by the New York State Bar Association; National Employment Lawyers' Association/NY, and The Impact Fund, among others.  Ms. Liu was admitted to the bar of the State of New York in 2010, and the bar of the State of California in 2011.  Ms. Liu is also admitted to the bars of the United States District Courts for the Southern and Eastern Districts of New York, the Northern, Central, and Southern Districts of California, and the Eastern District of Michigan.  Ms. Liu is a member in good standing of each of these bars.

b.  Attorney Melissa Lardo Stewart joined O&G as an Associate in the Class Action Practice Group in November 2013 after completing clerkships in the Eastern District of New York and the District of New Jersey, and then working for two years as an associate at Woodley & McGillivary, where she litigated multi-plaintiff wage and hour actions and represented labor unions in a wide range of labor-management relations matters. Melissa received her B.A. from the University of Pennsylvania and her J.D. in 2009 from Fordham University School of Law, magna cum laude.

c.  Simone Etwaru is a paralegal at O&G.  Prior to joining O&G in 2014, Ms. Etwaru was a litigation paralegal at various law firms for 7+ years.  She received her B.A. in Political Science and Philosophy from Queens College.  She received her Paralegal Certificate from Queens College in 2001.

**O&G's General Expertise**

13.  O&G is experienced and nationally recognized for its expertise in litigating complex class actions, including wage and hour cases like this one.  *See, e.g.*, *Jacob v. Duane Reade, Inc.*, No. 11-CV-0160 (JPO), 2016 WL 3221148, at *1 (S.D.N.Y. June 9, 2016) (denying motion to decertify class and collective of assistant store managers); *Briggs v. PNC Financial Services Group, Inc.*, No. 15 Civ. 10446, 2016 WL 1043429 (N.D. Ill. Mar. 16, 2016) (certifying collective of nationwide assistant managers); *Watson v. Jimmy John's, LLC*, No. 15 Civ. 6010, 2015 WL 7180516, at *1 (N.D. Ill. Nov. 13, 2015) (certifying collective of nationwide assistant managers); *Flood v. Carlson Restaurants Inc.*, No. 14 Civ. 2740, 2015 WL 260436, at *1 (S.D.N.Y. Jan. 20, 2015) (certifying collective of nationwide tipped workers); *Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *7 (S.D.N.Y. Dec. 29, 2014) (appointing O&G as class counsel, explaining that "[b]ased on the firm's performance

6

before [the court] in this and other cases and its work in the foregoing and other cases, [the court has] no question that it will prosecute the interests of the class vigorously."); *Beckman*, 293 F.R.D. at 477 (noting that O&G "are experienced employment lawyers with good reputations among the employment law bar"); *Yuzary v. HSBC USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181, at *4 (S.D.N.Y. Apr. 30, 2013) (appointing O&G as class counsel); *Capsolas*, 2012 WL 1656920, at *2 (appointing O&G as class counsel and noting O&G attorneys "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 622 (S.D.N.Y. 2012) (O&G attorneys "have substantial experience prosecuting wage and hour and other employment-based class and collective actions."); *Johnson*, 2011 WL 1872405, at *2 (May 17, 2011) (appointing O&G as class counsel); *McMahon*, 2010 WL 2399328, at *6 (O&G "are experienced employment lawyers with good reputations among the employment law bar . . . [and] have prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Damassia*, 250 F.R.D. at 158 (O&G lawyers have "an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area").

**Overview of Investigation, Litigation and Settlement Negotiations**

14. Before the initiation of this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses.

15. Plaintiffs' Counsel focused their investigation and legal research on the underlying merits of the potential collective action members' claims, the damages to which they were entitled, and the propriety of collective action certification.

16. Plaintiffs' Counsel obtained and reviewed documents from Plaintiffs and other sources, including job descriptions, pay records, and corporate documents.

17. Plaintiffs' Counsel also conducted in-depth interviews of numerous Co-Managers.

18. Plaintiffs filed their Complaint against Defendants on July 23, 2014.

19. Plaintiffs filed their First Amended Complaint on August 25, 2014. In response, Defendants claimed that it had properly classified CMs as exempt from the FLSA's overtime requirements and disputed the overtime hours Plaintiffs claimed.

20. The Named Plaintiffs and Discovery Opt-Ins filed their Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) ("Conditional Certification Motion") on December 23, 2014.

21. On June 24, 2015, the Court conditionally certified the case as a collective action consisting of all Co-Managers who worked for Defendants on or after July 23, 2011, who elect to opt-in to the action.

22. Defendants opposed Plaintiffs' proposed notice and notice process.

23. After the Court resolved the disputed issues related to the notice, Plaintiffs issued notice of this action on August 14, 2015 through a third-party administrator to 556 individuals identified by U.S. Bank who worked for U.S. Bank as CMs at in-store branches in the United States, excluding those branches in California, on or after July 23, 2011.

24. One Hundred Sixty Six Co-Managers joined the lawsuit.

25. Following the notice period, the parties engaged in formal written discovery and numerous discovery conferrals related to the served discovery requests and electronically stored information.

26. In March 2016 the parties agreed to attend a formal mediation conference to take place on June 7, 2016 with Michael Young of JAMS, a well-respected mediator with expertise in collective wage and hour matters.

27. In addition to formal discovery, the parties informally exchanged data in anticipation of mediation to allow them to evaluate damages and the claims and defenses in this lawsuit, including the analysis of whether CMs supervised two full-time employees.

28. Plaintiffs obtained detailed information from over 40 opt-in plaintiffs in advance of the mediation conference.

29. The parties submitted detailed mediation briefs and analyzed damages for the opt-ins and for all 556 CMs who received notice of this lawsuit.

30. On June 7, 2016, the parties participated in a full-day mediation session with Mr. Young. Those efforts were productive, and the parties reached a conditional agreement after additional negotiation with the mediator.

31. During the ensuing months, the parties finalized the terms of the settlement, which were memorialized in a formal Settlement Agreement executed by the parties on or about December 9, 2016. *See* Ex. A (Settlement Agreement).

**Settlement Claims Administrator**

32. The parties have retained Rust Consulting, Inc., a wage and hour claims administrator, to serve as the Settlement Administrator.

33. The Settlement Administrator's fees of a maximum of $26,000.00 will be paid from the Gross Settlement Amount. These fees will cover preparing the notices, claims processing, cutting checks and mailing them, tax and accounting advice related to the establishment of the Qualified Settlement Fund, determining tax treatment and performing tax

reporting, and preparation of tax returns (and the taxes associated with such tax return) for the Qualified Settlement Fund. The fee may increase slightly in the event that additional class members are identified.

**Settlement**

34. The settlement amount of $1,150,000 is substantial, especially in light of the considerable risk that Plaintiffs face. Establishing the "willful" violation by Defendants under the FLSA to capture the third year of damages would have been difficult. This case also presented difficult issues and analysis of whether CMs supervised at least two full-time employees to determine if they qualify for the executive exemption.

35. Plaintiffs' calculations show that the average net settlement award to Opt-In Class Members will be approximately $2,413.00 (after fees, service awards, and costs (including settlement administration costs) are netted out).

36. By Plaintiffs' estimate, this is a substantial percentage of the class' lost wages.

37. All Participating Class Members' awards will be calculated according to the same allocation formula. Plaintiffs' Counsel have drafted a simple notice, planned robust efforts to locate Class Members for whom the initial notices are returned undeliverable, and included reminder notices for participating in the settlement and cashing settlement checks.

**Service Awards**

38. The Named Plaintiffs and the Discovery Opt-Ins request approval of service awards of $10,000.00 each. The Service Awards that they request are reasonable given the significant contributions they made to advance the prosecution and resolution of the lawsuit.

39. Plaintiffs and Discovery Opt-Ins took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit. They

10

participated in an extensive pre-suit investigation, provided documents crucial to establishing their claims and the claims of the putative Class, extensively reviewed the claims presented, sat for depositions, responded to written discovery and produced documents, and helped Class Counsel prepare for the mediation.

40. Plaintiffs and Discovery Opt-Ins undertook substantial direct and indirect risk. They agreed to bring the action in their names, to be deposed, and to testify if there was a trial.

41. Plaintiffs and Discovery Opt-Ins spent a significant amount of time and effort in pursuing this litigation on behalf of the Participating Class Members. This included the time and effort they expended in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought, assisting in the preparation and review of the complaint, responding to discovery and sitting for depositions, and preparing for the mediation.

42. The requested Service Awards amount to less than 4.4% of the total recovery, which is a reasonable percentage.

**Attorneys' Fees and Costs**

43. This Settlement will provide the Class with a substantial cash payment. The Settlement Agreement provides that Defendants will pay a maximum settlement amount of $1,150,000.00 to settle all claims against them. This is well within the range of reasonable recoveries for the Class.

44. The settlement represents significant value given the attendant risks of litigation.

45. By Plaintiffs' estimation, the $1,150,000.00 guaranteed settlement amount represents approximately 545 hours of unpaid overtime for each of the Opt-In Class Members. Base on a half-time rate, this is approximately 94% of the class's lost wages, based upon the estimate that each Eligible Class Member worked an average of 10 overtime hours per week.

46. Before agreeing to take on this matter, Plaintiffs' Counsel agreed with the Named Plaintiffs to request no more than one-third of any (at that time uncertain) future recovery, plus costs. In doing so, Plaintiffs' Counsel incurred significant risk. Some risks include the possibility that the Court will decline to certify a collective and/or decertify a conditionally certified collective, and that such a determination would be reached only after extensive briefing.

47. As of November 29, 2016, O&G has incurred $222,462.50 in fees and $16,934.63 in costs. *See* Ex. B (Fees and Costs Summary). These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff member participating in the case. Plaintiffs' Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it.

48. Plaintiffs' Counsel takes on difficult cases like this one because we believe they are important. Plaintiffs' Counsel takes seriously our responsibility to push the law in a direction favorable for employees, especially those employees who face unpaid wages. Plaintiffs' Counsel continues to do so despite, unfortunately, having suffered several major (and very expensive) losses in wage and hour cases over the years. Like this case, Plaintiffs' Counsel believed that each of these cases was meritorious but understood the risks.

49. While Plaintiffs believe that they could ultimately establish both liability and damages here, this would require significant factual development. Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: December 9, 2016
New York, New York

By: */s/ Justin M. Swartz*
Justin M. Swartz
**OUTTEN & GOLDEN LLP**
Justin M. Swartz
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

## CERTIFICATION OF SERVICE

I hereby certify that on **December 9, 2016**, a copy of the foregoing documents were filed electronically and service made by certified mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by certified mail for anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

                                                    */s/ Justin M. Swartz*
                                                    Justin M. Swartz